UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| SHAWNA A. J., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  Case No. 21-CV-198-CDL |
| | ) |
| KILOLO KIJAKAZI,[1] | ) |
| Acting Commissioner of the | ) |
| Social Security Administration, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

Plaintiff seeks judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying Social Security disability insurance benefits and supplemental security income benefits. The parties have consented to proceed before a United States Magistrate Judge in accordance with 28 U.S.C. § 636(c)(1), (2). For the reasons set forth below, the Court **affirms** the Commissioner's decision.

**I.     Standard of Review**

The Social Security Act (the Act) provides disability insurance benefits to qualifying individuals who have a physical or mental disability. *See* 42 U.S.C. § 423. The Act defines "disability" as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be

---

[1]     Pursuant to Fed. R. Civ. P. 25(d)(1), Kilolo Kijakazi, Acting Commissioner of Social Security, is substituted as the defendant in this action.

expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *See* 42 U.S.C. § 423(d)(1)(A).

Judicial review of a Commissioner's disability determination "'is limited to determining whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence.'" *Noreja v. Soc. Sec. Comm'r*, 952 F.3d 1172, 1177 (10th Cir. 2020) (citing *Knight ex rel. P.K. v. Colvin*, 756 F.3d 1171, 1175 (10th Cir. 2014)). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1178 (quoting *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005)); *see also Biestek v. Berryhill*, --- U.S. ---, 139 S. Ct. 1148, 1154 (2019). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Noreja*, 952 F.3d at 1178 (quoting *Grogan*, 399 F.3d at 1261-62).

So long as supported by substantial evidence, the agency's factual findings are "conclusive." *Biestek*, 139 S. Ct. at 1152 (quoting 42 U.S.C. § 405(g)). Thus, the court may not reweigh the evidence or substitute its judgment for that of the agency. *Noreja*, 952 F.3d at 1178.

**II.   Procedural History**

In 2019, the plaintiff protectively filed applications for disability insurance benefits under Title II and for supplemental security income (SSI) under Title XVI of the Act. Plaintiff alleged a disability onset date 17 years earlier, July 1, 2002, when she was 29 years old. (R. 63). She alleged disability due to chronic back pain, torn cartilage, and fibromyalgia. *Id*. The claims were denied initially and on reconsideration. Plaintiff then

requested a hearing before an Administrative Law Judge (ALJ), and the ALJ held a hearing on November 5, 2020. The plaintiff and a vocational expert (VE) testified at the hearing. Following the hearing, the ALJ found that the plaintiff was not disabled and denied disability insurance benefits as well as SSI benefits.

With respect to her claim under Title II of the Act, the ALJ found that plaintiff's date last insured was December 31, 2006 and the evidence did not establish that plaintiff had any severe impairments prior to that date. (R. 14). On the SSI claim, the ALJ found that the evidence showed some severe impairments as of her May 2019 application date. However, the ALJ found that the plaintiff retained the ability to perform a range of sedentary to light work and could perform three representative sedentary occupations with significant numbers in the national economy, such that she was not disabled.

The Appeals Council denied the plaintiff's request for review, which rendered the ALJ's decision the agency's final decision. (R. 1). Accordingly, the Court has jurisdiction to review the ALJ's decision under 42 U.S.C. §§ 405(g) and 1383(c).

### III. The ALJ's Decision

The Commissioner uses a five-step, sequential process to determine whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). At step one, the ALJ determines whether the claimant is engaged in substantial gainful activity. At step two, the ALJ determines whether the claimant has an impairment or a combination of impairments that is severe. At step three, the ALJ determines whether the claimant's severe impairment or combination of impairments is equivalent to one that is listed in the applicable regulation, which the Commissioner "acknowledges are so severe as to preclude

3

substantial gainful activity." *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988) (internal quotation and citation omitted); *see* 20 C.F.R. § 404.1520(d); 20 C.F.R. Part 404, subpt. P, App'x 1 (Listings). At step four, the claimant must show that her impairment or combination of impairments prevents her from performing her previous work.

The claimant bears the burden on steps one through four. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). If the claimant satisfies that burden, thus establishing a prima facie case of disability, the burden of proof shifts to the Commissioner to show at step five that the claimant retains the capacity to perform other work available in the national economy, in light of the claimant's age, education, and work experience. *Id*.

### A. Step One

The ALJ found that the plaintiff met the insured status requirements through December 31, 2006 and has not engaged in substantial gainful activity since her alleged disability onset date of July 1, 2002. (R. 14).

### B. Step Two

The ALJ determined that the plaintiff had no severe impairments from the alleged onset date through the date last insured (December 31, 2006). However, that ALJ found that, beginning May 2019, the protective filing date of the SSI application, the plaintiff has the following severe impairments: lumbar spine impairment, left knee impairment, right shoulder impairment, unspecified depressive disorder, and attention deficit / hyperactivity disorder (ADHD). (R. 14).

### C. Step Three

The ALJ determined that the plaintiff does not have an impairment or combination of impairments that meet or medically equal the criteria of a Listing, specifically noting Listings 1.02(A) and 1.02(B) (abnormalities of the upper and lower extremities), 1.04 (disorders of the spine), 12.04 (depressive, bipolar and related disorders), and 12.11 (mental functioning).

The ALJ addressed the "paragraph B" criteria—four areas of mental functioning used to determine whether a claimant's mental impairments functionally equal a Listing. *Id.; see* 20 C.F.R. § 404 Subpt. P App'x 1). To satisfy the paragraph B criteria, a claimant's mental impairments must result in at least one extreme or two marked limitations in four areas of functioning. 20 C.F.R. § 404 Subpt. P App'x 1. A marked limitation means that the claimant's functioning in the area independently, appropriately, effectively, and on a sustained basis is seriously limited. *Id.* An extreme limitation means the inability to function independently, appropriately, or effectively, and on a sustained basis. *Id.* Here, the ALJ found that Plaintiff has a mild limitation in understanding, remembering, or applying information; a moderate limitation in interacting with others; a moderate limitation in concentrating, persisting, or maintaining pace; and a mild limitation in adapting or managing oneself. (R. 16-17). Because Plaintiff does not have at least one extreme or two or more marked limitations, the paragraph B criteria are not satisfied. (R. 17).

The ALJ also discussed the "paragraph C" criteria (for "serious and persistent mental disorders," *see* Listing 12.00A(2)(c)) and determined that they are not satisfied. *Id.* In accordance with these findings, the ALJ proceeded to step four.

### D. Step Four

The ALJ found that Plaintiff has the residual functional capacity (RFC) to perform

> less than the full range of sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a). Specifically, the claimant is able to lift or carry, push or pull twenty pounds occasionally and ten pounds frequently. The claimant can sit for six hours out of an eight-hour day, and stand or walk a combined total of four hours out of an eight-hour day. The claimant can occasionally climb ramps or stairs, but should avoid climbing ladders, ropes, or scaffolds. The claimant can frequently balance, kneel, stoop, crouch, and crawl. The claimant should avoid all overhead reaching. The claimant can understand, remember, and carry out simple tasks and detailed tasks of one to four steps. The claimant can tolerate superficial (brief and cursory) contact with coworkers, supervisors, and the general public.

(R. 17-18). While plaintiff has no past relevant work, the ALJ determined at step five that she can perform jobs existing in significant numbers in the national economy, including document preparer, DOT #249.587-018, unskilled (SVP-2), sedentary exertion, with 44,000 jobs in the national economy; printed circuit board screener, Dictionary of Occupational Titles (DOT) # 726.684-110, unskilled (SVP-2), sedentary exertion, with 24,000 in the national economy; and electronics worker, DOT #726.687-046, unskilled (SVP-2), sedentary exertion, with 19,600 in the national economy. (R. 29). Accordingly, the ALJ found plaintiff not disabled at step five.

IV. **Discussion**

Plaintiff argues that (1) the ALJ failed to properly address her obesity and (2) the ALJ's consistency analysis was flawed. The Commissioner argues that the ALJ's decision is legally sound and supported by substantial evidence.

A. **Obesity**

Under Social Security Ruling (SSR) 19-2p, the Commissioner "must consider the limiting effects of obesity when assessing a person's RFC." 2019 WL 2374244. Obesity may increase stress on weight-bearing joints, limit range of motion, or cause increased pain, among other issues. *See id*. Accordingly, in cases involving obesity, the ALJ should consider that the "combined effects of obesity with [an]other impairment[] may be greater" than effects of the other impairment alone. 2019 WL 2374244. Further, the ALJ should "not make general assumptions about the severity or functional effects of obesity combined with another impairment(s)." *Id*. at *4.

Plaintiff contends that the ALJ failed to adequately address obesity as required under SSR 19-2p. She notes, correctly, that the ALJ's decision did not use the term "obesity" or cite SSR 19-2p. The ALJ also did not address plaintiff's obesity at step two in listing her severe impairments. Although plaintiff acknowledges that the latter omission is not in itself a reversible error, plaintiff also contends that reversal is warranted because the ALJ failed to account for her obesity in the RFC assessment.

The ALJ's decision noted that plaintiff "is 5'6" tall and currently weighs 235 pounds but she stated she has lost approximately 35 pounds to help with pain and diabetes." (R. 20). As noted in the decision, Jennings testified that she had "lost approximately 35 pounds,

7

just to help with all of the pain and my diabetes." (R. 53; *see* R. 20). In setting forth the evidence used to determine plaintiff's RFC, the ALJ addressed several treatment notes relating to plaintiff's weight and counseling that was given to her on weight loss. (R. 21-22). On June 3, 2019, examination notes showed that plaintiff had "slightly antalgic gait but strength 5/5 in lower extremities, without deficits and [the doctor] noted she was overweight." (R. 22).

The administrative findings of Carla Werner, M.D. also indicated that the exertional and postural limitations she found were based on plaintiff's obesity, as well as her left knee arthroscopy and her pain limit. (R. 108-109). The limitations included lifting and/or carrying up to 20 pounds occasionally and up to 10 pounds frequently; standing or walking for a total of four hours in an 8-hour workday; frequent climbing of ramps and stairs; never climbing ropes, ladders, or scaffolds; frequent balancing, stooping, kneeling, crouching, and crawling. (R. 108-109). In explaining her RFC findings, Dr. Werner noted that plaintiff "had left knee arthroscopy in 1/2019. At reconsideration, a review of medical evidence shows [plaintiff] is healing and is able to function on the above[-]written RFC. Obesity considered." (R. 110).

The ALJ found Dr. Werner's opinion, as well as the administrative findings of William Oehlert, M.D. on initial review, to be consistent with the evidence and therefore persuasive. (R. 27). The ALJ thus adopted the same limitations in the RFC determination, except that the ALJ also found that "due to [plaintiff's] shoulder impairment[, a limitation of] no overhead reaching" is warranted. *Id*. Accordingly, even if the ALJ erred in failing

to address obesity at step two, the ALJ's RFC determination is no more restrictive than the medical opinions in the record.

Plaintiff suggests that further analysis of obesity could have resulted in additional limitations in the RFC determination. She asserts that this condition warranted further discussion in relation to her pain and other symptoms associated with her severe impairments of the left knee, right shoulder, and lumbar spine. However, she asserts that she does not know how a "proper consideration" of obesity would have changed the ALJ's RFC assessment. (Doc. 11 at 10).

In fact, the ALJ adopted a restrictive, less-than-sedentary RFC based, in part, on the administrative findings of Dr. Werner, who explained that her opinion considered plaintiff's obesity. As such, this is not a circumstance, such as in *Steven D.*, "where the Court has no way of knowing why the ALJ included no obesity-related limitations in the RFC." *Steven D. v. Saul*, No. 18-cv-330-JED-FHM, 2020 WL 5229703, *3 (N.D. Okla. Sept. 2, 2020) (finding error in the ALJ's reasoning related to claimant's obesity where the ALJ "did not discuss obesity at all."). To the contrary, the ALJ's decision shows that he considered the medical and nonmedical evidence concerning Plaintiff's obesity, and the RFC limitations adopted by the ALJ include limitations related to obesity.

Plaintiff does not identify any evidence that her obesity causes further limitations that would preclude performing sedentary work with the limitations set out. Accordingly, the court finds that any deficiency in the ALJ's articulation of how he considered obesity in this case was harmless. *Compare Arles v. Astrue*, 438 F. App'x 735, *12-13 (10th Cir. 2011) (unpublished) (noting that, although "[t]he ALJ could have provided a more

9

particularized discussion of the effects of Mr. Arles's obesity" on his musculoskeletal function, the Plaintiff did not "discuss or cite to any evidence showing that obesity further limited his ability to perform a restricted range of sedentary work," and consequently the ALJ's statement that he considered the SSR 02-01p criteria "provide[d] an adequate discussion of the effect of obesity on [the] RFC");[2] *see also Smith v. Colvin*, 625 F. App'x. 896, 899 (10th Cir. 2015) (unpublished) (ALJ not required to note, for each specific piece of evidence, the absence of evidence that obesity contributed to additional functional limitations or exacerbated any impairment); *Rose v. Colvin*, 634 F. App'x 632, 637 (10th Cir. 2015) (unpublished) (no error where the ALJ did not specifically mention obesity in the RFC, but did include specific postural limitations, and the claimant failed to show evidence obesity required greater functional limitations); *see also Razo v. Colvin*, 663 F. App'x 710, 716-17 (10th Cir. 2016) (unpublished) ("The ramifications of obesity are subsumed within the discussion of Mr. Razo's other medical conditions. Furthermore, Mr. Razo does not discuss or cite to medical or other evidence to support his claim that his obesity was disabling. Therefore, we conclude that the factual record does not support Mr. Razo's claim that the ALJ failed to consider the effect of his obesity, either alone or in combination with other impairments, in the RFC assessment."). Accordingly, the Court finds no reversible error regarding the ALJ's consideration of Plaintiff's obesity in making the RFC determination.

---

[2] Under 10th Cir. R. 32.1(A), "[u]npublished decisions are not precedential, but may be cited for their persuasive value."

B.    **Consistency Analysis**

A claimant's subjective complaints of pain or other symptoms, alone, cannot establish disability. *See* 20 C.F.R. § 404.1529(a). In assessing the intensity and persistence of a claimant's pain, the Commissioner will consider objective medical evidence and will "carefully consider any other information [a claimant] may submit about [their] symptoms." 20 C.F.R. § 404.1529(c). In evaluating such statements, an ALJ must consider: "(1) whether the claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether the impairment is reasonably expected to produce some pain of the sort alleged (what we term a 'loose nexus'); and (3) if so, whether considering all the evidence, both objective and subjective, the claimant's pain was in fact disabling." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166-67 (10th Cir. 2012) (citing *Luna v. Bowen*, 834 F.2d 161, 163-64 (10th Cir. 1987)).³ Consistency determinations "are peculiarly the

---

³    While the Commissioner now describes the analysis as involving a two-step process, the current regulatory policy generally comports with the approach as outlined in previous cases, including *Luna v. Bowen*, 834 F.2d 161 (10th Cir. 1987) and *Keyes-Zachary v. Astrue*, 695 F.3d 1156 (10th Cir. 2012). *See Paulek v. Colvin*, 662 F. App'x 588, 593-94 (10th Cir. 2016) (unpublished). (Under 10th Cir. R. 32.1(A), "[u]npublished decisions are not precedential, but may be cited for their persuasive value.").

The applicable regulations further explain that in evaluating pain, the Commissioner considers factors including

> (i) [the claimant's] daily activities;
> (ii) The location, duration, frequency, and intensity of . . . pain or other symptoms;
> (iii) Precipitating and aggravating factors;
> (iv) The type, dosage, effectiveness, and side effects of any medication [the claimant] take[s] or ha[s] taken to alleviate . . . pain or other symptoms;
> (v) Treatment, other than medication, [the claimant] receive[s] or ha[s] received for relief of . . . pain or other symptoms;

11

province of the finder of fact." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995); *see also White v. Barnhart*, 287 F.3d 903, 910 (10th Cir. 2001) (ALJ's evaluation of symptom allegations "warrant particular deference").[4] However, the ALJ must explain "the link between the evidence and" consistency determination. *Kepler*, 68 F.3d at 391; *see also* 20 C.F.R. § 404.1529 (ALJ must provide "specific reasons . . . supported by the evidence in the case record"). Courts "will not upset such determinations when supported by substantial evidence." *Wilson v. Astrue,* 602 F.3d 1136, 1144 (10th Cir. 2010) (citing *Diaz v. Sec'y of Health & Hum. Servs.,* 898 F.2d 774, 777 (10th Cir. 1990)).

Here, the ALJ's decision summarized plaintiff's hearing testimony, written statements, and medical notations of symptoms that she reported to providers. Plaintiff

---

> (vi) Any measures [the claimant] use[s] or ha[s] used to relieve . . . pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and
> (vii) Other factors concerning [the claimant's] functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c); *see also Keyes-Zachary,* 695 F.3d at 1167; *Branum*, 385 F.3d at 1273-74 (quoting *Hargis v. Sullivan,* 945 F2d. 1482, 1489 (10th Cir. 1991)) (describing several similar factors which should be analyzed).

[4]     The Commissioner no longer uses the term "credibility." *See* Social Security Ruling (SSR) 16-3p, 2017 WL 5180304 (explaining purpose to "eliminat[e] the use of the term 'credibility' from [the Commissioner's] sub-regulatory policy, as our regulations do not use this term," and "clarify[ing] that subjective symptom evaluation is not an examination of an individual's character"). However, the agency continues to follow the same "fundamental rule . . . that 'if an individual's statements about the intensity, persistence, and limiting effects of symptoms are inconsistent with the objective medical evidence and the other evidence, [an ALJ] will determine that the individual's symptoms are less likely to reduce his or her capacities to perform work-related activities.'" *Zhu v. Comm'r, SSA*, No. 20-3180, 2021 WL 2794533, at *5 n.7 (10th Cir. July 6, 2021) (unpublished) (quoting SSR 16-3p).

testified that constant pain, which she rated at 8, prevents her from working. (R. 18). She stated that she spends her day lying in a recliner with pillows to support her neck and back, and with her ankle elevated due to pain and swelling. (R. 19). Plaintiff stated that she uses a cart or wheelchair to grocery shop. She indicated that she needs help completing chores and that "her children help her with her shoes and gets things out of her dresser drawers if needed." *Id*.

The ALJ found these statements were not entirely consistent with medical evidence in the record. He explained:

> such limited activities are not supported by the examinations as discussed below, and . . . when seen by Dr. Boone status post back surgery (2020), she repeatedly stated she had been "walking a lot."
>
> When questioned by her counsel, she testified she underwent back surgery (Dr. Boone) but she stated the surgery has helped very little. Again, this is inconsistent with Dr. Boone's examinations and her reports to him. She also stated she has not started physical therapy yet, but clearly it has been recommended, as discussed below[. H]owever, she stated the back brace helps.

*Id*.

Plaintiff testified that after undergoing right shoulder surgery in January 2020, she still had shooting and burning pain. However, the ALJ explained,

> the actual follow[-]up records related to her shoulder indicate that when seen on January 13, 2020, she reported she was doing well overall and examination revealed active forward flexion around 80 and the provider noted she could get her passively to around 140 (sutures were removed). On February 11, 2020, she had full active and passive motion with only mild pain over the AC joint with motion, and it was noted her strength was "coming back nicely." When last seen for

13

> follow[-]up of her shoulder, she reported she had been doing much better. Examination revealed excellent active range of motion in all planes, she had good deltoid and rotator cuff strength and no pain with strength testing. There was some mild pain with palpation to the AC joint region, but alignment was normal and neurovascular was intact.

(R. 20 (citing exhibits)). Thus, the ALJ found plaintiff's reported shoulder pain was not consistent with the evidence. *Id*.

Plaintiff "described her neck pain as constant," and testified that she has migraines "all the time, everyday 24/7"; however, as the ALJ noted, she "acknowledged she takes only over the counter medication for her headaches." *Id*. Medical records show that she has been treated conservatively for neck and spinal issues. *Id*.

Plaintiff argues that the ALJ failed to consider her "continued attempts to relieve symptoms caused by her impairments," including "multiple surgeries, injections, bundle branch blocks, ablations, and pain medications." (Pl's Br., Doc. 11 at 15). To the contrary, however, the ALJ's decision addressed each of these measures in explaining the RFC analysis. (*See* R. 18-26). As the decision noted, in recounting her testimony, plaintiff "stated she has undergone injections, blocks and ablation, and was referred to a surgeon, which the evidence does support[,] and then she went through the process for pain management." (R. 18). As set forth above, the decision further explained why, despite these measures, evidence in the record did not fully support the extent of limitations that plaintiff alleged.

Regarding mental impairments, plaintiff "did not allege any mental limitations during her testimony." (R. 20). During a psychological consultative examination, she

14

reported diagnoses of depression and ADHD. (R. 25). Although she reported no previous mental health treatment, "she stated she had been prescribed anti-depressants by her primary care physician." *Id*. She presented as "depressed with full range of affect, alert, oriented x 4, and able to read, write, and comprehend, as evidenced by her ability to accurately complete screening forms." (R. 26). She also "exhibited adequate comprehension, attention and concentration, and was able to follow basic 3-step instructions. . . . Plaintiff also provided appropriate responses to questions related to judgment, insight and abstraction and was able to perform Serial 7's slowly, providing three correct solutions." *Id*. Dr. Kobel opined that plaintiff could manage her own finances. *Id*.

The ALJ noted that in treatment records, plaintiff was observed as alert, oriented, and cooperative, with congruent mood and affect. Id. On one occasion the assessment was recurrent major depression, "uncontrolled but improved, as evidenced by PHQ-9." *Id*. However, the ALJ noted that "there have been no further notations about mental health," and despite plaintiff's testimony that she takes Cymbalta for "all of [her] symptoms," she did not testify as to any specific mental limitations. *Id*. Finally, the ALJ noted that the record contains no opinion from any provider indicating that plaintiff has limitations beyond the RFC determination. *Id*.

As such, the ALJ sufficiently explained "the link between the evidence and credibility determination." *Kepler*, 68 F.3d at 391. Nothing more was required. *See White v. Barnhart*, 287 F.3d 903, 910 (10th Cir. 2002) (ALJ's evaluation of symptom allegations "warrant particular deference"); *see also Lax*, 489 F.3d at 1084 ("We may not displace the

15

agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo.") (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)). Accordingly, plaintiff's argument fails.

## V.  Conclusion

For the reasons set forth above, the Court finds the ALJ's decision is supported by substantial evidence and that the ALJ applied the correct legal standards. Accordingly, the decision of the Commissioner finding Plaintiff not disabled is **affirmed**.

**SO ORDERED** this 30th day of September, 2022.

*Christine D. Little*
Christine D. Little
United States Magistrate Judge